THE BANK OF THE UNITED STATES, APPELLANT; *vs.* ELIZABETH LEE, EDMUND J. LEE, AND RICHARD SMITH, APPELLEES.

R. B. L. in 1809, then residing in Virginia, for a valuable consideration, made a conveyance in trust for the benefit of his wife, of certain personal property, and slaves, which deed was duly recorded according to the provisions of the act of the legislature of Virginia. The property thus conveyed, remained in the possession of the husband and wife, while they resided in Virginia; and in 1814, R. B. L. removed to the District of Columbia, with his wife and family, and brought with him the slaves and property conveyed in trust for his wife. In 1817, R. B. L. borrowed a sum of money of the Bank of the United States, on his promissory note, endorsed by one of the trustees named in the deed of trust, of 1809. At the time the loan was made, R. B. L. executed a deed of trust of eleven slaves, and among them were the slaves and the household furniture conveyed by the deed of 1809, to secure the bank for the amount of the loan. In 1827, R. B. L. died, entirely insolvent. During his residence in Washington, being in reduced circumstances, he sold some of the slaves, conveyed by the deed of 1809, for the support of his family; without objection by his wife or her trustees. In 1834, the debt to the bank being unpaid, a bill was filed against Mrs. E. L., the wife of R. B. L., and the trustees, in order to compel the surrender of the remaining slaves, and the household furniture, to the trustee for the bank, for the sale of the same, to satisfy the debt due to the bank: held, that the deed of 1809, vesting the property in Mrs. L.'s trustees, was effectual, according to the laws of Virginia, to protect the title thereto, against the subsequent creditors, or purchasers from R. B. Lee; and that the removal of R. B. L. and his wife, into the District of Columbia, with the property conveyed to the trustees for the use of Mrs. L., did not affect or impair the validity of the deed of trust.

A liberal construction should be given to the clause of the Virginia statute, for the suppression of fraud. This is the well established rule in the construction of the statute of Elizabeth, which the first section of the Virginia statute substantially adopts.

If A sells, or conveys his lands or slaves to B, and then produces to another his previous paper title, and obtains credit on the goods or lands, by pledging them for money loaned, he is guilty of fraud; and if the true owner stands by, and does not make his title known, he will be bound to make good the contract, on the principle that he who holds his peace when he ought to have spoken, shall not be heard now that he should be silent. He is deemed, in equity, a party to the fraud.

ON appeal from the Circuit Court of the United States, for the county of Washington, in the District of Columbia.

The appellant filed a bill in the Circuit Court, stating, that in 1817, Richard Bland Lee represented himself to be the owner of certain after mentioned property, then in his possession; that he applied to the bank for a loan of $6000, and offered to convey the said property in trust, to secure the repayment of said sum of money; that the loan was made, and a deed of trust executed and delivered on the 11th June, 1817, to Richard Smith, as trustee; that the said Lee died in 1827, intestate and insolvent, leaving said debt unpaid; that no administration was taken on his estate; that his widow, Elizabeth Lee, the defendant, has taken possession of said property, and withholds it from said trustee, alleging that it had been previously conveyed by her said husband, in January, 1809, to trustees, for her use.

The bill charges, that the said deed of the 9th January, 1809, if ever made, was a voluntary and fraudulent deed; and, therefore, void against the complainants, who are bona fide purchasers, for a

valuable consideration without notice: that the considerations expressed in the said deed are false, or, if true, insufficient to give it solidity; that at the date of the said deed, Richard Bland Lee was largely indebted, and incompetent at law to make the same; that if the said deed had every legal requisite, it was executed in Virginia, and never was recorded in Washington county, in the District of Columbia, to which place the said Lee and his wife removed, bringing with them the said property, or was other notice given to the public then of its existence: that E. J. Lee, the surviving trustee, in the deed of the 9th January, 1809, and Mrs. Lee, herself, knew that the complainant had loaned the $6000 to Richard Bland Lee, upon his representations that he was the owner of the said property, and that Richard Bland Lee had conveyed the same to Richard Smith, to secure the payment of the said sum of money; and never communicated to the complainants, or to Smith, until several years after the death of Richard Bland Lee, the existence of the deed of the 9th January, 1809.

The bill prayed that the deed of the 9th January may be produced, the execution thereof and the recitals therein fully proved; and that it may be declared fraudulent and void against the complainants.

Elizabeth Lee, in her answer, admits the loan, and the execution of the deed to Richard Smith, but avers she was ignorant of its execution until long after it had been delivered, and never consented thereto; she denies any knowledge of the representations made by Richard Bland Lee, respecting the ownership of said property, when he applied for the loan.

She says, that on the 9th January, 1809, she and her husband, then living, and having a long time before dwelt in Fairfax county, Virginia, and the property in the deed mentioned therein, being in the said county, she agreed with her husband to relinquish her right of dower in certain lands in Spotsylvania county, Virginia, in which her husband held five-eighths of eight thousand acres; and also to convey her right in certain Fairfax land, containing two thousand one hundred acres, her separate property, to trustees, to secure a debt of $10,034 28, due from her husband to Judge Washington; in consideration of which, and of her execution of the conveyances and relinquishment of her dower, her husband agreed to convey to E. J. Lee, William Maffit, and R. Coleman, certain slaves, &c., of which those mentioned in the bill of complaint are part, for her use; that it was agreed that her said husband should be authorized to sell any part of the said property, with consent of a majority of the said trustees, provided he should convey to the said trustees other property, to the full value of that sold. She avers that, in execution of this agreement, and in consideration of the deed of the slaves, &c., of the 9th January, 1809, she executed the deed of the Spotsylvania land, and relinquished her dower therein; that on the 9th January, 1809, she conveyed the land in Fairfax, to secure Judge Washington's debt; and on the same day

her husband, in fulfilment of his part of the agreement, made and executed the deed of the 9th January, 1809, to E. J. Lee, Maffit, and Coleman, of the slaves, &c., which deed was duly proved and recorded in Fairfax County Court, within eight months from its date; in which said county, she still continued for some time to reside with her husband, and where she continued to hold the said property. The deeds are exhibited with the answer.

She declares the agreement to have been bona fide, and without fraud, and claims to be the owner of said property. She admits her husband sold part of the property, with the consent of her trustees, and other part under the pressure of great distress, without their consent, after they removed to Washington; that her husband died in 1827; that they lived together until his death; and that her possession of the property, being domestic servants and household furniture, could not be separated from his, and was consistent with the deed.

The case is stated more at large in the opinion of the Court.

The Circuit Court decreed that the bill should be dismissed; and the complainants prosecuted this appeal.

For the appellant, Coxe and Mr. Sergeant contended:—

I. That the deed of 9th January, 1809, was, from the beginning, fraudulent and void.

1. Because on the face of said deed no valid consideration appears; but the same is voluntary, by a person largely indebted, in favour of his wife and children.

2. Because no such agreement, as is set forth in defendant Elizabeth Lee's answer, is proved; although put in issue by the pleadings, and strict proof is required by the complainants.

3. Because it is admitted that the property recited in said deed to have been conveyed to Turner and others, was merely conveyed, by way of mortgage, to secure a debt due to Judge Washington; which debt has been paid from other sources, and the said property so mortgaged has been exonerated from said incumbrance.

4. Because no such deed as is recited in the deed of 9th January, 1809, as having been then made to Ludwell Lee, appears ever to have been executed.

5. Because the deed of 16th July, 1809, from R. B. Lee and Elizabeth his wife, to Ludwell Lee, does not correspond with the description in the recital of the deed of 9th January, 1809.

II. Because the continued possession, use, and enjoyment by said R. B. Lee, of the said property, purported to be conveyed by the deed of 9th January, 1809, was evidence of a continued ownership; and avoids said deed as against subsequent bona fide purchasers and creditors, without notice.

III. That said deed, so executed in Virginia, will not validate the possession, use, and enjoyment of said property in the city of Washington.

IV. Because the whole case exhibits a case of gross and palpable fraud, which ought not to stand in a Court of Equity.

[The Bank of the United States *vs.* Elizabeth Lee et al.]

For the appellees, Mr. Marbury and Mr. Cooke insisted, that the deed of January 9th, 1809, is valid against the complainants. That, considered as a voluntary settlement, it is good against the complainants, they being subsequent creditors.

That the said deed was made for good and valuable considerations between the parties.

That there is no evidence to charge Mrs. Lee, or her trustee, with any fraudulent practice on the complainants; in the concealment of their title to the property at any time.

That the possession of Richard Bland Lee, after his removal to the District of Columbia, was consistent with the deed, and the necessary consequence of his relation to Mrs. Lee.

That it was not necessary to record the deed in the District of Columbia, on the removal of the parties and of the property to Washington city.

That the power reserved to Mr. Lee, to dispose of the property with the consent of the trustees, is not a badge of fraud; and does not affect the validity of the deed in which that power is reserved.

That the sale by Richard Bland Lee of portions of the said trust property, without the assent of the trustees, cannot affect the title of Mrs. Lee to that part which he did not sell.

Mr. Justice CATRON delivered the opinion of the Court.—

The bill alleges, as a principal ground of relief, fraud in fact, in the inception of the conveyance sought to be set aside: this being denied by the answers, it is incumbent that fraud in fact should be proved by the complainants; and which, they insist, is established by the proofs. As the pleadings and exhibits furnish almost the entire evidence, it becomes material to set them out to a considerable extent. And in extracting the facts, from which it is supposed we are authorized to infer fraud, it must be done with reference to the bearing of the local and peculiar laws of Virginia on the transaction.

It appears that, in 1817, Richard Bland Lee, the husband of Elizabeth Lee, the respondent, borrowed from the Bank of the United States, at their office of discount at Washington, $6,000 on his note at sixty days, (renewable at the pleasure of the bank,) and endorsed by Ed. J. Lee and Walter Jones: and further to secure the repayment of the money, executed a deed of trust for eleven slaves, and sundry household goods, valued at $7,200, to Richard Smith, the cashier of office of discount, with power to the trustee to sell in default of payment, after giving thirty days' notice. The deed also pledged some outstanding claims, not necessary to be noticed, as they proved to be of no material value. The debt not having been paid, after long indulgence, suit was brought, and a recovery had, against Richard Bland Lee, and Walter Jones, one of the endorsers; but no part of the judgment has been satisfied.

In 1834 the president, directors, and company of the bank filed their bill against Edmund J. Lee, Elizabeth Lee, and Richard Smith, the

trustee; alleging that Richard Bland Lee died in 1827 intestate; that no one had administered on his estate, and that Elizabeth Lee had converted the slaves and household goods to her own use after the death of her husband; that she was executrix in her own wrong, and bound to pay the debt; but refused to do so, asserting the property pledged to pay the bank debt by her late husband, had been conveyed by him, as early as 1809, to Ed. J. Lee, William Maffit, and Richard Coleman, in trust for the sole and separate use of the said Elizabeth; that she had exhibited the deed to the complainants, but which they aver was voluntary, fraudulent, and void, as against them, because they were purchasers for a valuable consideration, without notice of such deed; as also creditors of Richard Bland Lee, the grantor. That the considerations set forth in the deed are not truly stated; but, if truly stated, they are wholly insufficient to give validity to the same. That Richard Bland Lee, at the date of the deed in 1809, was largely indebted, and incompetent in law to make such deed for the benefit of his wife and family.

That if the deed was duly executed, and upon legal and adequate consideration when made, yet the same was executed in the commonwealth of Virginia; that the trustees had never acted under it, or taken possession of the property embraced in it; but had suffered Richard Bland Lee, the grantor, at all times, and without interruption, from the date of the deed to the time of his death, to retain possession of the property, and to use, enjoy, and dispose of the same, and held himself out to the world as the true and absolute owner; and especially, that the trustees had permitted the grantor to bring the slaves and furniture from Virginia to the District of Columbia and county of Washington, about the year 1814, and there to continue his use and enjoyment of the same, as if he were the absolute, entire, and unqualified owner thereof.

That the deed was never recorded in the county of Washington, nor notice given to the public, or the complainants, of its existence, during the lifetime of Richard Bland Lee, nor for some years after his death; but he was permitted to obtain credit and contract debts upon the faith of his being the sole and absolute owner of the slaves and goods described in the deed; and permitted to sell and dispose of parts of the same without any assertion of right or title on the part of the trustees or said Elizabeth; and that Ed. J. Lee, the only surviving trustee, and the said Elizabeth, knew that the complainants had made the loan of the $6,000 to Richard Bland Lee, in the full faith that he was the real and unqualified owner of the property; and knew he had made and executed the deed of trust to Richard Smith, to secure the repayment of the money; yet they did not communicate to the complainants the existence of the deed made for the benefit of the said Elizabeth, during the lifetime of Richard Bland Lee, nor until several years after his death; nor did said Ed. J. Lee, or Elizabeth, intimate in any manner, or give the complainants, or their trustee, reason to suspect that there was any defect in the title derived under the deed to Richard Smith; nor that Ed. J.

Lee, or Elizabeth, had any title or claim, or pretended to have, to the slaves and furniture.

The foregoing allegations present two aspects; 1st, That the deed of 1809 was fraudulent and void in its inception: and, 2d, That if valid in Virginia, it not having been recorded in the county of Washington, (formerly a part of Maryland,) and the continued possession of the property covered by it having remained with the grantor, both in Virginia and here, up to the time of his death; was such a fraud upon creditors of, and purchasers from, Richard Bland Lee, as to destroy the effect of the conveyance.

The deed of 1809, amongst other things, sets forth that Richard Bland Lee owed Judge Washington $10,034 28; and, as a part of the consideration, Mrs. Lee had joined her husband in a mortgage to trustees for Judge Washington's use, pledging her separate estate to secure the debt. These specific facts the bill does not set forth; but, by way of interrogatory, asks the defendants to answer, whether the debt mentioned in said deed, as being due to Judge Washington, had ever been paid; by whom, and from what funds; and the respondents are required to produce the deed.

It also appears that the complainants commenced an action of replevin against Mrs. Lee for the slaves and household goods; and which was, by an agreement of the parties, suspended until the termination of this suit.

Ed. J. Lee answers, that the deed of 1809 was executed by Richard Bland Lee, to himself and others, as trustees for Elizabeth Lee, the wife of said Richard Bland Lee; that it sets forth the true consideration for the same; that the respondent is the only surviving trustee; that he never did give notice to the complainants of the existence of the deed; but that he did not know, until shortly before Richard Bland Lee's death, that he had made the deed of trust to Richard Smith; and which never received respondent's assent. That he cannot state, from general recollection, how the debt due to Judge Washington was paid; but it is his impression it was paid either by stock in the Bank of Alexandria, which belonged to Elizabeth Lee, and was held in trust for her by her brother Zacheus Collins, deceased; or by a sale of part of the farm called Langley.

Elizabeth Lee answers, that the loan of $6,000 was made by the bank as charged; but that she was ignorant of the execution of the deed of trust to Richard Smith, to secure the repayment of the money, until long after the deed had been delivered and the loan made: denies she ever assented thereto, or waived her rights to the slaves, or any part of the property purporting to have been conveyed by the deed. Admits the recovery of the judgment as alleged; and that Richard Bland Lee died in 1827, intestate and insolvent; and that no one has administered on his estate.

And, further answering, says that on the 9th day of January, in the year 1809, the said Richard B. Lee and this respondent, then dwelling, and having for a long time before dwelt in the county of Fairfax, in the state of Virginia, and the slaves and other personal

property hereinafter mentioned, then being in the said county, she agreed with the said Richard to relinquish her right of dower in a certain tract of land in the county of Spotsylvania, in the commonwealth of Virginia, on the Rappahannock river, containing eight thousand acres, more or less, of five undivided eighth parts, of which the said Richard Bland Lee was seised in fee simple, and to join the said Richard in a conveyance thereof to Ludwell Lee.

She also, on the same day, agreed to join her said husband in the execution of a deed of trust to Henry Smith Turner, Thomas Blackburn, and Bushrod Washington, Jun., conveying to them two tracts of land in the said county of Fairfax, one situated on the river Potomac, near the Little Falls thereof, containing sixteen hundred acres, more or less; the other being the estate on which the said Richard and this respondent then resided, containing five hundred and thirty acres, more or less; which tracts of land were then held in trust for this respondent: which last mentioned conveyance was to be made to the said Turner and others, in trust to secure the payment of the sum of ten thousand and thirty-four dollars and twenty-eight cents, due from the said Richard to the Honourable Bushrod Washington. And in consideration of the execution of the said conveyance by this respondent, and of her thereby relinquishing her dower in the said Spotsylvania lands, and her right to the said lands in Fairfax, the said Richard, on his part, agreed to convey to Edmund J. Lee, William Maffit, and Richard Coleman, all the household and kitchen furniture, carpeting, beds, bedsteads, bed furniture, plate, chinaware, glass, tables, chairs, table linen, carpets, sideboards, bureaus, wardrobes; and all kinds of furniture, then in their said dwelling house and kitchen; estimated to be worth sixteen hundred dollars; and the following slaves, that is to say : John, and his wife Alice, and their children Patty, Betty, Henry, Charles, Johnny, Margaret, Milly, and Frank; Ludwell, and his wife Nancy, and their children Caroline, Harriet, Frederick, Ludwell, and Barbara; Henny and her child Eleanor ; Rachel and her child Rachel; two sisters, Kitty and Letty, and their brothers, Alexander and Alfred; George, (a blacksmith,) Harry, (a carpenter,) Harry, (a wagoner,) Tom, (a carter,) Thornton, (a cook,) Samuel, (a smith,) and John, (a ploughboy,) to be held by the said E. J. Lee, William Maffit, and Richard Coleman, and the survivors and survivor of them, and the executors and administrators of such survivor, in trust, for the use of this respondent, during her life; and after her death, to pass to her heirs at law, provided she died intestate, or to such persons as she might bequeath the same to by her last will and testament, so as she should make the same pass fully and completely, and without limitation or condition, to her heirs or legatees : It was further agreed by the said Richard and this respondent, that the said Richard should be authorized, at any time during his life, to sell or otherwise dispose of any part of the said slaves and furniture, with the consent of a majority of the said trustees, or of the survivors or survivor of them, or of the executors or administrators of the last

survivor, provided the said Richard should convey to the said trustees, or to the survivors or survivor, or the executors or administrators of the last survivor, other property, real or personal, to the full value of the said furniture or slaves, so sold or disposed of. And it was further agreed, that if the said Richard should fully pay the said debt to the Honourable Bushrod Washington, without selling any part of the lands to be conveyed to the said Henry S. Turner and others, in trust, as aforesaid, and then held in trust for the said Elizabeth, then that the conveyance to be made as aforesaid, to the said E. J. Lee, William Maffit, and Richard Coleman, should become null and void, as to the slaves Ludwell, Thornton, Henry, Butler, Tom, Samuel, Jack, and Eleanor.

And the said Elizabeth avers, that in execution of the said agreement, and in consideration of the conveyance by the terms thereof to be made to the said E. J. Lee, William Maffit, and Richard Coleman, for her use, in manner and on the terms aforesaid, she did, on the 16th day of July, 1809, in due form of law, with the said R. B. Lee, execute and deliver to the said Ludwell, a conveyance in fee of the said lands in Spotsylvania, thereby relinquishing her claim of dower therein. And did, with the said Richard, in due form of law, on the 9th day of January, 1809, execute and deliver to the said Henry S. Turner, Thomas Blackburn, and Bushrod Washington, Jun., a deed for the said lands, in Fairfax county, whereby she conveyed her right to the said lands last mentioned, to the said Turner and others, in trust, to secure the payment of the said debt, due from the said Richard B. Lee to the Honourable Bushrod Washington, in the manner provided by the said agreement. And that the said Richard did, on the same day, in execution of the said agreement, on his part, execute and deliver to the said E. J. Lee, William Maffit, and Richard Coleman, a conveyance, whereby he transferred and conveyed to them the said slaves and furniture before mentioned, to be held in trust for this respondent, in the manner and on the terms before stated, which said deed was duly proved and recorded, within eight months from the date thereof, in the County Court of the county of Fairfax, in which the said Richard and this respondent continued still to reside, and in which the said slaves and furniture still remained. And this defendant herewith exhibits the said three deeds severally, marked, Exhibits, No. 1, No. 2, and No. 3. This respondent avers, that the said agreement before mentioned, was made between the said Richard and her; and the said deeds executed in pursuance thereof, fairly and bona fide, without any intention to defeat, defraud, hinder, or delay any creditor of the said Richard. She is advised and insists that they were duly proved and recorded, according to the laws of the state of Virginia, and that, under the same, she is a bona fide purchaser of the said slaves and furniture, according to the terms of the said deed to E. J. Lee and others; and that the said deed fully protects her in the right to the said property conveyed, according to the terms thereof, against all creditors of the said Richard, and all pur-

chasers subsequently to the date thereof. And this respondent has before herewith exhibited, as part of her answer to said deeds with the certificate of proof and record thereof, by the clerk of the County Court of Fairfax county, marked Exhibit No. 3.

This respondent admits that no sale of the Fairfax lands was made under the said deed to Henry S. Turner and others; she, therefore, makes no claim to the slaves, Ludwell, Thornton, Henry, Butler, Tom, Samuel, Jack, and Eleanor; that none of the said last mentioned slaves are in her possession or subject to her control, nor were they so when the complainants issued out their writ of replevin in their bill mentioned, or at the time they instituted this suit.

In this case it is agreed, that the following facts be, and they are hereby, admitted as true, reserving all objections to the admissibility of the facts as competent testimony in the case, viz. That Richard Bland Lee and his wife Elizabeth, one of the defendants, resided at Fairfax county, in the state of Virginia, on the 9th January, in the year 1809, and said Richard B. Lee then held the negroes and other personal property, mentioned in the deed of that date, from said Richard B. Lee, to Lee, Maffit, and Coleman, filed with defendant Elizabeth's answer, and marked Exhibit No. 3.

That the said R. B. Lee and his wife Elizabeth were housekeepers, and resided together, in Fairfax county, at the date aforesaid, that the said negroes and other personal property continued in their possession after the date of the 9th January, 1809, had been made, in like manner as such possession had been held before said deed was made, and so continued until they removed to Washington City, in the year 1814 or 1815, when they brought said negroes and other property, from Fairfax county with them to the city of Washington. That from the period of said removal to Washington, said personal property, as distinguished from the negroes, was assessed by the officers of the corporation as the property of the said Richard B. Lee.

That four of the said negroes were, for the first time, in the year 1818, assessed to said Richard B. Lee. That prior to the 9th day of January, in the year 1809, the said Richard B. Lee was seized in fee of five undivided eighth parts of 8000 acres of land in Spotsylvania county, in the state of Virginia, which was conveyed by said Richard B. Lee and said Elizabeth his wife, to Ludwell Lee in fee simple.

The execution, due acknowledgment, and recording of the deed and bills of sale, exhibited with the defendant Elizabeth Lee's answer, is admitted.

The execution and service of the notices exhibited with the answer of the defendant, Edmund J. Lee, is admitted.

It is admitted that the deed of the 9th January, 1809, was delivered to the trustees therein named, and that they agreed to act, but never took possession of the property therein mentioned, or of any part of it.

It is also agreed that the deeds referred to in E. J. Lee's, Eliza-

beth Lee's, and Richard Smith's answers, severally, were duly executed, acknowledged, and recorded, and are to be received and treated as parts of the record in this case.

On these pleadings, exhibits, and admissions, various positions are assumed as grounds of relief.

The deed of January 9, 1809, recites that Mrs. Lee had executed a deed to Ludwell Lee, relinquishing her right of dower to the 5000 acres of land in Spotsylvania; whereas, the deed to Ludwell Lee, relinquishing the dower interest, bears date subsequently, in July, 1809.

It is insisted for complainants, that the recital was false, and that this part of the consideration had must be rejected. We do not think so. The transaction is of nearly thirty years' standing, and not so open to explanation as a more recent one; it may be, that a deed had been executed by Mrs. Lee, as recited, to Ludwell Lee, and that it was afterwards superseded by another: be this as it may, Richard Bland Lee was estopped by the recital in his own deed; and Mrs. Lee's trustees, bound to performance on her part, supposing the recital to have been untrue. The substance of the contract was, that she should relinquish her dower interest to Ludwell Lee; and she did relinquish it, obviously in compliance with the agreement; and that it was done in July, instead of the preceding January, is an immaterial circumstance. The husband's alienee acquired the disencumbered estate in consideration of the deed sought to be impeached; and in a Court of Equity, cannot deprive the wife of the slaves, without doing equity to her, by restoring the lands now beyond our reach; provided the transaction was bona fide.

The other part of the consideration was the deed of trust (of January 9th, 1809) by which the Fairfax estates of Sully and Langley were pledged for the payment of the debt due to Judge Washington. These estates were the separate and sole property of Mrs. Lee; and not being subject to execution by the laws of Virginia, the creditor had not the slightest claim upon them, and it would have been most unwise for Mrs. Lee to have onerated them without ample indemnity.

Judging of the probabilities in 1809, from future results, between that time and the death of Richard Bland Lee, in 1827, and we are inclined to conclude, that Mrs. Lee, with the ardour common to her sex, mistook her true interest in making the exchange of her lands for the slaves and household goods: that she has been greatly the sufferer, is free from doubt. The Virginia estates have passed into other hands, to satisfy her husband's creditors: most of the slaves have been sold to supply his improvidence and necessities: and the little that is left of the property secured to Mrs. Lee, (down to the humblest utensil,) is now sought to be appropriated to the satisfaction of the judgment on which the bill is founded.

That the deed of trust to Henry S. Turner, and others, to secure Judge Washington's debt, was executed in good faith, is not con-

.troverted; the objection is, that the debt was paid by means independent of the lands mortgaged; and the mortgage discharged. The consideration, therefore, given by Mrs. Lee for the slaves and other property secured to her separate use, is fully proved; and was ample when the contract was made; and this is all that rested upon the respondents to establish, to resist the claim of the complainants on the first aspect of the bill; that which alleges the deed to have been fraudulent in its inception.

But an after circumstance is invoked as furnishing evidence favourable to the complainants. In the interrogating part of the bill, the respondents are required to answer, whether the debt mentioned in the deed of 1809, as due to Judge Washington, had ever been paid; by whom, and from what funds? Edmund J. Lee, responds, that he had no distinct recollection on the subject: Mrs. Lee admits that no sale of the Fairfax lands was made under the deed to Henry S. Turner, and others, but that the eight slaves, who in such event were to be returned to her husband, had been disposed of by him, &c. If Mrs. Lee meant to say, that the trustees had not sold by virtue of the deed of trust for Judge Washington's benefit, then she answered truly; if, however, she is to be understood as answering, that the estates pledged were not applied, in part, to the extinguishment of the debt, then she was mistaken. Sully, the homestead, was sold to Francis Lightfoot Lee, in February 1811, for eighteen thousand dollars; embracing the five hundred acres which was Mrs. Lee's individual property, and including two hundred and seventeen acres in addition; out of which sum Judge Washington was paid seven thousand four hundred and fifty dollars. The estate was not conveyed by the trustees, but by Richard Bland Lee, the respondent Elizabeth, and Bushrod Washington, with covenants of title and warranty. The conveyance upon its face recites in the fullest manner, that seven thousand four hundred and fifty dollars of the purchase money had been paid by Francis Lightfoot Lee, to Judge Washington, in discharge of the balance of debt due to him. There can be little doubt, Mrs. Lee, in her answer was mistaken, in admitting to her prejudice that the Fairfax lands had not been appropriated to the payment of Judge Washington's debt. Her principal object seems to have been to disavow all claim of title to the eight slaves.

Suppose, however, that Judge Washington's debt had been paid by other means, and the Fairfax lands disencumbered of it; could the fact influence this cause. That it could not is manifest. The complainants, by their bill, do not seek to come in under the deed to Turner, and others; nor under that to Edmund J. Lee, and others: if they had, and if the fact had been established, that Mrs. Lee, by the payment of the debts from independent means, retained her lands, and the slaves also, then a Court of Equity would treat her as a trustee for Richard Bland Lee, and let in the complainants as his assignees, to subject the slaves, &c. to the payment of the bank debt. But the bill charges that the deed to Edmund J. Lee,

and others, was fraudulent, and void in its inception; presenting no case, founded on the subsequent transaction alluded to: and the Court cannot notice it other than as evidence to fix the fraud on the respondents in executing the deed sought to be set aside; which if valid then, must be deemed so now. The capacity of the husband to contract through the intervention of trustees, with the wife, and to make a valid conveyance, founded on a bona fide consideration paid out of the wife's separate estate, has not been questioned; nor is the doctrine open to controversy.

That a liberal construction should be given to the clause in the Virginia statute, for the suppression of fraud, we admit; this is the well established rule in construing the statutes of Elizabeth; which the first section of the Virginia statute substantially adopts.  (Heydon's case, 3 Rep. 1 Black. Com. 88.)  Fitzhugh *vs.* Anderson, 2 Hen. and Munford, 304.

On the second ground on which relief is sought, it is insisted, the complainants are entitled to have satisfaction out of the property claimed by Mrs. Lee.

" I. Because the continued possession, use, and enjoyment by said Richard Bland Lee, of the said property, purported to be conveyed by the deed of 9th January, 1809, was evidence of a continued ownership, and avoids said deed as against subsequent bona fide purchasers and creditors, without notice.

" II. That said deed, so executed in Virginia, will not validate the possession, use, and enjoyment of said property in the city of Washington."

The investigation of this assumed ground of relief, involves considerations affecting the nuptial relation.

We are asked to deal with the conduct of a wife, living in harmony with her husband, as if she was a third person; and to decree against her because she did not expose her husband to the community in which they lived, and especially to the complainants, when within the wife's knowledge he was holding out her property as his own; and using of it as his own, and obtaining credit upon the faith that he was the true and absolute owner.

That Richard Bland Lee did deal with and use the property in controversy, as if it had been his own, whilst he resided in this city; and that the community did believe him the true owner, and give him credit on the faith of the property, is no doubt true; and it is very probable that Mrs. Lee knew the fact, but continued passive and silent on the subject. She denies, however, that she had any knowledge of the execution of the deed of trust to Richard Smith, until long after it had been made; and the answer, being responsive to the allegations in the bill, is conclusive of the fact denied; there being no proof to the contrary.

Was it a duty incumbent on Mrs. Lee to advertise the community in which she lived, that her husband had no title to the property on the faith of which he was obtaining credit; but that it was hers? This would have been charging the husband with fraudulent con-

duct; for it cannot be denied, that if A sells and conveys his slaves or lands, and then produces to another his previous paper title, and obtains credit upon the goods or lands by pledging them for money loaned, he is guilty of a fraud; and if the true owner stands by and does not make his title known, he will be bound to make good the contract; on the principle that he who holds his peace when he ought to have spoken, shall not be heard now that he should be silent. He is deemed in equity a party to the fraud. How far the principle applies in a case of the wife of a fraudulent vendor standing by, we are not called on to decide; and wish to be understood as not deciding. Mrs. Lee's is not that case; to say the most, she was only passive and silent, in regard to her rights generally; although she may have had knowledge that Mr. Lee was obtaining credit on the faith of her property; and the question is, was it her duty to have acted otherwise? All we need say is, that a Court of Chancery cannot hold Mrs. Lee responsible, because of her silence

Then as to the question of possession continuing with the grantor, Leave the relation of man and wife between Richard Bland Lee and Elizabeth Lee, out of view, and it would be impossible that any one could have been misled by Mrs. Lee having the possession: she having the sole and exclusive beneficial interest and right of possession. The difficulty arises from a circumstance, the existence of which the statutes of Virginia contemplated and provided for. By the act of 1785, it is declared, that where any reservation or limitation shall be made of a use, or property, by way of condition, reversion, remainder, or otherwise, in goods and chattels, the possession whereof shall remain in another, the same shall be taken, as to creditors and purchasers of the persons remaining in possession, to be fraudulent, within the first section of the act; and that the absolute property is with the possession; unless such reservation or limitation of a use, or property, is declared by will or by deed, proved by two witnesses in the general Court, or the Court of the county wherein one of the parties lives, within eight months after the execution thereof.

The statute of Virginia has been adopted in Tennessee; where it has been holden, that a deed like the present, founded on a good consideration, and separating the title from the possession, was within the statute, and must be recorded: but when recorded, creditors and purchasers of him who retains the possession must take notice of it; and that the recording exempts the property from liability to execution. Crenshaw vs. Anthony, Martin and Yerger's R. 110. The great object of the act was to secure the settlement of slaves by the intervention of executors, and trustees, so as to retain them in the family; and this could be done by a bona fide gift of a husband, (not materially indebted at the time,) to a wife or children; if the deed was duly recorded, to the exclusion not only of subsequent creditors, but subsequent purchasers also, contrary to the 27th of Elizabeth; whereby (in the language of the Supreme Court of Tennessee, in Marshall vs. Booker, 1 Yerger's R. 15) "an extra-

vagant, spendthrift husband, may provide for his wife and children, before they are overtaken by ruin." But we can say with Lord Hardwicke, in Russell and Hayward against Hammond, (1 Atk.) "that we have hardly known one case, where a person conveying was deeply indebted at the time of such gift, that it has not been deemed fraudulent." In Virginia, therefore, the possession of Mrs. Lee was in accordance with the established practice, and is in no degree subject to imputation.

It is insisted, however, that when Richard Bland Lee removed into Washington City, the statute of Maryland operated on the Virginia title of Mrs. Lee, and defeated it for the benefit of purchasers from her husband.

The statute declares, that no goods, or chattels, whereof the vendor shall remain in possession, shall pass, alter, or change, or any property thereof be transferred to any purchaser, &c., unless the same be by writing, and acknowledged before one provincial justice, or one justice of the county where such seller shall reside, and be within twenty days recorded in the records of the same county. 1729. ch. 8. sec. 5.

The statute has no reference to a case where the title has been vested by the laws of another state; but operates only on sales, mortgages, and gifts, made in Maryland. The writing is to be recorded in the same county where the seller shall reside, when it is executed. The seller, Richard Bland Lee, residing in Virginia, it was impossible for Mrs. Lee to comply with the act. That the Virginia deed secured to Mrs. Lee the same rights here that it did in Virginia, we apprehend to be, to some extent, an adjudged question. It has frequently arisen in the state Courts. The case of Smith *vs.* Burch, 3 Harris and Johnson, was this: In 1804, Brodhag owed Jones, and gave a deed of trust on slaves to secure the debt, (three thousand dollars,) executed to Smith, as trustee. The parties resided in Georgetown, where the act of Maryland of 1729, continued in force after this District was separated from Maryland. The deed of trust was duly proved, and recorded in the District of Columbia; Brodhag retaining the possession of the slaves. In 1805, Brodhag removed to Alleghany county, Maryland, and continued in possession of the slaves, as apparent owner, until August 1809, when the sheriff of Alleghany seized on them by virtue of an execution against Brodhag, in favour of Deakin's executors; and Smith, the trustee, sued Bruce, the sheriff, in trespass. In that case (as in this) Brodhag had given in the slaves to the assessor of taxes; and had sold part of them between 1804 and 1809.

The Court of Appeals of Maryland, in substance, held, that the act of 1729 did not affect the case; and the only proof required to sustain the plaintiff's title, was the bill of sale, (as it is denominated;) and that it lay on the defendant to prove fraud in fact in order to avoid it.

In 1804 the jurisdictions exercised in the District of Columbia, and the state of Maryland, were as distinct as those of Virginia and the

District.; so that the case of Burch *vs.* Smith was similar in respect to conflict of jurisdiction with the one before the Court.

The same point came up in Tennessee, and met the decision of the Supreme Court of that state.

The following are the material facts in the Tennessee case:

In 1812, in Lunenberg county, Virginia, Daniel Crenshaw sold and conveyed certain slaves to Richard Herring, who soon after contracted for the purchase of a tract of land from Daniel Crenshaw, lying in the same county; but Nancy Crenshaw, the wife of Daniel, refused to relinquish her right of dower: and to induce her to do so, Herring agreed with her and her son, Cornelius Crenshaw, to convey to the latter, in trust for his mother, and for her separate use, two of the slaves previously purchased from Daniel Crenshaw. The deed was duly executed and recorded in Lunenburg.

- In 1814 Daniel Crenshaw and his wife removed to Tennessee, carrying the slaves with them; Cornelius the trustee continuing to reside in Virginia.

In Tennessee, to all appearance, Daniel Crenshaw was the true owner of the slaves, and acquired credit on the faith of the property. He was improvident, for which reason, manifestly, the wife caused the slaves to be secured to herself: and it may be remarked that similar motives have led to many, not to say most of this description of conveyances in the states where the provisions of the act of 1785 of Virginia, prevail.

In 1821, Stacy recovered a judgment against Daniel Crenshaw in the county of his residence in Tennessee, by virtue of an execution, founded on which Anthony, the sheriff, seized upon the slaves; and Cornelius Crenshaw, as his mother's trustee, sued the sheriff in detinue. The Circuit Court held the deed of trust void by force of the statute of Tennessee, (which is very nearly a transcript of that of Virginia,) because the deed had not been recorded in Tennessee; a verdict was rendered for the defendant; and the plaintiff prosecuted his writ of error to the Supreme Court, where the judgment was reversed.

The Court held, that the deed made in Virginia, separating the title and possession, was of a character to be operated upon by the act of 1785 of Virginia; and had the deed not been recorded there, as to creditors and purchasers, the title would have been deemed to be with the possession: but having been recorded there, a title fair and unimpeachable, vested in the trustee, and cestui que trust, Nancy; that being valid in Virginia, the statute of Tennessee could not affect it. Furthermore:

The Court refused to hold the wife responsible, because she had continued passive and silent in regard to her separate right to the slaves; by which individuals might have been, and in all probability were, induced to believe her husband the true owner, and to give him credit on the faith of the property. In that case, as in this, the wife had done no affirmative act, designedly to draw in the creditor to trust her husband; and the Court believed, by remaining silent

she had violated no duty; nor been guilty of any deceit on which a forfeiture of her right could be pronounced.

The deed in controversy is also embraced by the 4th section of the statute of Virginia, which, amongst other things, provides for the recording of all deeds of trust and mortgages, upon acknowledgment or proof according to the directions of the act; it having been holden by the Courts of Virginia, and this Court, (3 Hen. and Mun. 232; 3 Cranch. 150,) that deeds conveying chattels are included within the section referred to. And the deed vesting the property in Mrs. Lee's trustees, having been duly recorded in the manner required by the statute, it was effectual according to the laws of Virginia, to protect the title against subsequent creditors of, or purchasers from, Richard Bland Lee.

Upon the whole, we are of opinion the decree below dismissing the bill, should be affirmed.

Mr. Justice BALDWIN dissented.

Mr. Justice THOMPSON did not sit in this cause.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. In consideration whereof, it is decreed and ordered by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.