## ADMINISTRATOR BARRED FROM SALE OF LAND TO PAY CONCEALED INDEBTEDNESS TO AN HEIR.

Probate Court of Washington County.

JOHN H. RILEY, ADMINISTRATOR OF JAMES STEEN, V. JOHN H. ARNOLD ET AL.

Decided, December, 1916.

*Estates of Decedents—Heir Conceals Indebtedness to Him and Participates in Partition of Land of the Decedent—Then Proves His Claim and Administrator Files Suit to Sell the Same Land in Satisfaction Thereof.*

In an action brought by an administrator to sell land for payment of an indebtedness to one of the heirs, the defense lies that the said land was sold to the present holders in an action in partition within one year of the death of the decedent and that the heir, now asserting a claim, concealed said indebtedness and became a party to the partition proceeding and shared in the proceeds from the sale, his disclosure of the claim and proof thereof before the administrator occurring subsequent thereto.

*C. H. Danford, N. E. Kidd* and *W. E. Sykes,* for plaintiff.
*Strecker & Williamson,* contra.

SMITH, J.

This is an action by an administrator to subject the lands of a decedent to the payment of his debts.

On the face of the petition it is an ordinary case under Section 10774 *et seq.* of the General Code, which makes it the duty of the administrator, as soon as he finds that the personal property is insufficient to pay the debts of the decedent and the costs of administration, to bring his action either in the proper probate court or court of common pleas to subject any real estate he may have left for that purpose.

The petition alleges that the plaintiff is the duly appointed and qualified administrator of the estate of James Steen, late of Washington county, deceased, and that the debts due from the

deceased is about $5,000, as near as can be ascertained, among which indebtedness is a judgment in favor of John W. Steen, son and one of the heirs at law of James Steen, for $4,000, constituting by far the largest part of said indebtedness, and that the charges of administration will be about $500, making in all total charges of about $5,500.

The petition further alleges that the total value of decedent's personal property applicable to the payment of his debts is but $2,154.26, being wholly insufficient to pay the debts and costs aforesaid; that the decedent left about 132 acres of land, more or less, in Warren township, Washington county, Ohio, which is described, and asking that it be sold to apply upon the debts and costs aforesaid.

To this petition John H. Arnold, Raymond A. Arnold, John W. Steen and Henry Arnold were made parties defendant and were duly served by summons, and afterwards by motion of plaintiff Eliza J. Bragg and Rowena Duffy were made parties defendant and were served by publication.

The defendants John W. Steen, Eliza J. Bragg and Rowena Duffy are children of the deceased, James Steen, and his sole heirs at law and were entitled to the next state of inheritance in his real estate. The defendants, John H. Arnold and Raymond A. Arnold, are purchasers under a partition suit in the court of common pleas of this county and the defendant, Henry Arnold, is mortgagee under said John H. Arnold and Raymond A. Arnold.

A further statement of facts is necessary to a complete understanding of the case as under the answers of John H. Arnold and Raymond A. Arnold, purchasers at the partition sale, and Henry Arnold, mortgagee, Sections 10818 and 10819 of the General Code are also brought into the case, as Section 10818 requires the administrator after the institution of proceedings for partition to make a written statement to the probate court of the funds necessary to pay the indebtedness. And the probate court shall ascertain the amount necessary in addition to the personal assets and give a certificate thereof to the administrator, and Section 10819 requires the administrator to present this to the

court in which the partition suit is or has been pending, and said court shall order the amount necessary to pay the indebtedness to be paid to the administrator out of the proceeds of the sale.

· There is a further provision to said Section 10819 which provides that nothing therein contained shall prohibit the executor or administrator from proceeding to sell the land, although it may have been sold on partition or otherwise and the funds fully distributed.

Section 12028, General Code; also provides that no partition shall be ordered within one year of the death of an inhabitant of this state, unless it be alleged and proved that all debts and claims against the estate had been paid or secured to be paid or that the personal property of the deceased is sufficient to pay them.

To the petition of plaintiff, John H. and Raymond A. Arnold, by their answer and cross-petition, set out the partition suit; that the petition therein alleges that the personal property of deceased was sufficient to pay his debts and costs of administering his estate, etc.; that all the heirs of James Steen were duly made parties defendant and that the court of common pleas found the petition to be true and ordered a writ of partition of said premises, and that such proceedings were duly had under the order of said court that the premises were sold to these answering defendants for the sum of $3,050 and were paid for by them, and that by the order of said court they received a deed for the same from the sheriff of said county and entered upon said premises and made lasting and valuable improvements upon said premises and paid the taxes thereon; that the proceeds arising from said sale were, after the payment of costs, divided among the heirs of said James Steen, the said defendant John W. Steen receiving as his share of the net proceeds thereof the sum of $953.37, and each of the other heirs a like amount.

There are further allegations that the personal property of decedent was ample to pay all his debts and expenses of administering his estate, except the judgment of the said John W. Steen, and that it is not necessary to sell the same; that John Steen is and should be estopped from aserting any claim against

said real estate in the hands of these defendants; that they relied upon and acted upon the judgments and decrees in the partition suit above set forth and were induced thereby and by the actions and admissions of said John W. Steen to purchase said real estate, and asking that the title be quieted, etc.

The answer and cross-petition of Henry Arnold, after making the allegations of the answer and cross-petition of John H. and Raymond A. Arnold a part thereof, sets up a mortgage for $2,300, and asks that it be declared a first lien upon the said property.

To each of these answers and cross-petitions the plaintiff John H. Riley, as administrator of James Steen, and John W. Steen for himself as defendant, have filed demurrers.

The records show that James Steen died intestate on the 8th day of January, 1913. On the 5th day of March, 1913, less than two months after the death of her father, Eliza J. Bragg filed her suit in partition in the Court of Common Pleas of Washington County, alleging that she, Rowena Duffy and John W. Steen were the sole heirs of James Steen and each entitled to one-third of his estate and asking partition of his real estate hereinbefore referred to, and being the same real estate described in plaintiff's petition in this suit and also alleging that the personal property of said decedent was sufficient to pay all debts and costs of administering his estate.

John W. Steen was duly served with summons in said partition case on the 7th day of March, 1913, and the other defendants entered their voluntary appearance to said action. All the defendants were in default for answer and demurrer to the petition.

On July 28, 1913, a judgment and decree was entered in said partition case finding all and singular the allegations of the petition to be true, that Eliza J. Bragg, Rowena Duffy and John W. Steen were tenants in common in said premises and each entitled to one-third part thereof.

Under said judgment and decree a writ of partition was issued and such proceedings had that on the 27th day of September, 1913, the sheriff of Washington county sold said real estate

to John H. and Raymond A. Arnold, defendants to the petition herein, for $3,050, and on the 29th day of September, 1913, said court of common pleas· duly approved' and confirmed said proceedings and ordered the sheriff to convey said premises to said answering defendants herein, and said sheriff did convey said premises to said answering defendants and received the purchase ·price of $3,050 therefor, and delivered to the purchasers the deed for said premises, and these answering defendants then took possession of said premises.

On November 7, 1913, the net proceeds of said sale was ·by said sheriff under an order therefor issued distributed among the said heirs, the said John W. Steen receiving his share amounting to $953.37, each of the others receiving the same amount, in all $2,860.11, and the shares of all excepting John W. Steen have been removed from the jurisdiction of said court of common pleas, to-wit, to the state of California, where the said other heirs reside.

It does not appear when the claim of John W. Steen was presented to the administrator of James Steen, but in the absence of any statement or proof to the contrary the presumption is that, if it had been .presented prior to the distribution of the funds under the partition suit, the administrator would have taken the necessary steps to hold up said funds until after the claim had been determined.

Suit was not brought in the court of common pleas against said administrator upon the claim of John W. Steen until December 20, 1913.

It is unnecessary at present to go into this case further than to determine whether the several demurrers to the answers and cross-petitions of John H. and· Raymond A. Arnold and of Henry Arnold should be overruled or sustained.

Several principles seem to come into direct conflict in this case.

There is no question that under many circumstances the administrator of an estate has the right and it would be his duty to proceed to sell the real estate of a decedent for the purpose of paying his debts, notwithstanding the fact that the lands might

have been partitioned among the heirs or otherwise disposed of. Section 10819, General Code, just hereinbefore quoted, so specifically provides.

The same doctrine is stated in many cases by our own courts.

*Faran, Administrator,* v. *Robinson et al,* 17 O. S., 243, is a case where the administrator had, as he supposed, finally settled the estate and partition of it had been made, but he was sued upon a claim, and after defense made thereto, judgment was rendered against him, and upon this judgment he brought an action to sell the real estate theretofore partitioned. After said supposed final settlement was examined and allowed and the court in deciding this case, referring to the judgment upon which the action was brought, says:

"Whether error did or did not intervene in the rendition of that judgment is not a question of which in this proceeding we can take cognizance. In this collateral proceeding it is conclusive evidence of the indebtedness adjudged by it, unless impeached for fraud or mistake in obtaining it, or perhaps the culpable negligence of the plaintiff in the defense of the action in which it was obtained, and no fraud or mistake recognized in law as such is here claimed to have existed in the obtaining of the judgment against the plaintiff in this case, nor is there any allegation of such negligence."

Again the court says:

"The fact that the real estate of the plaintiff's intestate has been partitioned among his heirs and by them conveyed with or without notice to third parties now claiming title in or through them makes no difference.

"Under our laws the real estate of a deceased person, subject to the widow's right of dower, is in the last resort as much and as truly assets in the hands of his personal representative for the payment of his debts as his personal property is. His debts are a lien upon his real estate; his heirs to whom it descends take it *cum onere;* and whoever buys it from them does so subject to the rule of *caveat emptor.* For their indemnity, if any, in case their lands are sold out from under them, they must look to such guaranties or warranties as they may have had the precaution to insist on, or to such rights as they may have to compensation or redistribution from their co-partitioners."

In the case of *Doan et al* v. *Biteley,* 49 O. S., 589, the court says:

"W'--'le upon the death of the ancestor his real property passes to the heir at law or to the devisee in accordance with the provision of the will, it does so charged with the payment of his debts if it becomes necessary to resort to it for that purpose. The debts are a lien upon the land and the heirs take it *cum onere.*"

In *Myers* v. *Myers* (Circuit Court of Crawford County), 9th Ohio Circuit Reports (New Series), page 449, the same doctrine is fully laid down, and the Supreme Court has repeatedly held that the debts of the ancestor are a lien on his lands indefeasible by any action of the heirs or others in a partition case, and that any purchaser thereof, either by private purchase from the heirs or at a partition sale, takes the land *cum. onere.*

"And under the statutes and decisions previously referred to no order of partition could avail to prevent the sale of the lands on his demand, the necessity of a sale to pay debts being undisputed, nor could the partition, had one actually been made, and even though the lands had been resold to third parties have prevented a sale of the same lands at his demand. No title could have passed by an order of partition that would have been free from the claim of the administrator for debts of the estate."

In the case of *Stout* v. *Stout et al,* 82 O. S., 358, the same doctrine is laid down strongly, and the court uses this language:

"In other words, if there were no debts in excess of the personalty to be paid, the administrator could not possibly have any interest in the land, while if there were such debts the partition suit commenced the day after the decease of the intestate was simply an impertinence."

This case and that of *Myers* v. *Myers* above cited seem to question the right to or validity of any order or writ of partition issued prior to one year after the death of the decedent under any circumstances whatsoever. No court, at least, should issue said order unless bond be given as provided by Section 12028 of the General Code, for it would be next to impossible to ascertain with any certainty that the debts were all paid,

since creditors have one year from the date of notice of appointment in which to present their claims, and it is very loose practice at least to authorize the issuing of a writ prior to the expiration of one year in pursuance of the statute.

Is there anything in the case in hand to take it out of the general rule?

The facts have heretofore been stated and we have only to look at the claims made by the purchasers at the partition sale to see whether in equity John W. Steen would have the right to have the premises resold by the administrator for the purpose of paying his claim, or is he estopped by his action in the partition suit.

The petition of the plaintiff administrator on the face of it shows that the great bulk of the indebtedness arises from the judgment of said John W. Steen, who was a necessary party to the partition suit. Taking the statement of the administrator set out in his petition we find that the personal property of the estate amounted to $2,154.26, and that the indebtedness of the estate and estimated cost of administration, aside from the judgment of John W. Steen, would be but $1,000, leaving $1,154.26 applicable to the payment of claim of John W. Steen without selling the land. This, with the $953.37 received from the sale in the partition suit would make him $2,107.63.

The amount received by him, of course, is immaterial so far as a resale by the administrator is concerned unless he, Steen, be estopped.

It is claimed by plaintiff's attorney that the case of *Fisher's Executor* v. *Mossman et al,* 11 O. S., 44, applies, but it seems to us that it does not in any way. It was a mortgage lien duly recorded, open to all the world and notice to every one dealing with the premises. Herein John W. Steen was the owner of an undivided one-third interest in the land in question. It could be taken from him, without some action of his own, only if it became necessary to sell it to pay the debts of the ancestor from whom it came.

In addition to this fee simple title in the undivided one-third he had a silent lien upon the whole premises for whatever valid claim he could maintain against his deceased father's estate.

This lien, so far as the pleadings herein show, was kept within his own breast until after the partition sale and the distribution of the funds arising therefrom. He was in a position before that to know just exactly the net proceeds of the personal estate of his late father and to know what debts had been presented to the administrator.

I think we may safely presume under all the circumstances that up to the time of the distribution of the proceeds of the partition sale the administrator knew nothing of the claim of John W. Steen. And we must presume he would have done his duty and protected said estate as he should have done by laying claim to the proceeds thereof. So I think we may safely say that any claim against the estate or lien upon the real estate that he may have had remained locked in the bosom of John W. Steen, and until he saw fit to make it known no one else could do so.

The year not having expired in which he was required to make his claim known by presenting it to the administrator, was he then compelled to do so or be estopped?

In the case of *Williamson* v. *Jones,* American and English Decisions in Equity, Volume 4, the court (Supreme Court of Appeals of West Virginia) goes fully into estopppel. Paragraph 36, page 325, estoppel by concealment:

"The concealment of a material fact, by which the other party is led to believe in the existence of a different state of facts from that actually existing and to rely thereupon, is fraud equally with a misrepresentation of facts and will estop the one who is guilty of it from asserting the true state of affairs if such an assertion would injure the other party," etc.

Paragraph 37, page 316, estopped by silence:

"Whenever the observance of good faith toward his fellowman requires that one should disclose all that he knows in respect to a matter, silence as to any material fact, if it be the means of misleading another, who has the right to rely upon it and of inducing him to do any act or assume any position which he would not otherwise have done or assumed will estop the former from afterwards asserting to the prejudice of the latter the existence of the fact as to which he kept silent before. This

rule is tersely expressed in the following maxims:

"*Qui tacet consentire vi detur,* and

"One who is silent when he ought to speak will not be heard to speak when he ought to be silent.

"These maxims apply not only where a proposition is made to one which he is bound to affirm or deny, but also when he is silent in the face of facts which fairly call upon him to speak."

The same principle is laid down in *State, ex rel Garrett et al,* v. *Van Horne,* 7 O. S., 327; *Buckingham et al* v. *Smith & Dille,* 10 O. S., 283.

"If one knowingly, though he does it impassively by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel."

Paragraph 38, estopped by silence:

"Failure on the part of one who has title to property which another to his knowledge is about to purchase from a third person to disclose his title to the intending purchaser will estop him from asserting it afterwards if his silence formed an inducement to the purchase, and the same result will follow a failure to disclose a claim to or lien upon property to the prejudice of one who purchases on the faith of the non-existence of such claim or lien (or in other words who would not have purchased it at the price paid if he had known of the existence of such claim or lien)."

In the editor's note in the case of *In re Callahan's Estate,* Probate Reports, Annotated, Volume 2, page 693, we find many valuable references.

"What I induce my neighbor to regard as true is the truth as between us if he has been misled to my asseverations," became a settled rule of propery at a very early period in courts of equity.

There is no principle better established nor one founded on more solemn consideration of equity and public utility than that which declares that a man who knowingly, though he does it

passively, looks on and suffers another to purchase or expend money on land under an erroneous opinion of title without making known his own claim shall not be permitted to exercise his legal right against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel.

Mr. Herman, in his Treatise on Estoppel and Res Adjudicata, says:

"The law is not so unjust or absurd as it has been too much the custom to represent. Its foundation is laid in the obligation which every man is under to speak and act according to the truth of the case and in the policy of the law to prevent the great mischief resulting from uncertainty and want of confidence in the intercourse of men if they were permitted to deny that which they had deliberately asserted and received as true."

Sir James Stephen's statement, "When one person by anything which he does or says or abstains from doing or saying intentionally causes or permits another person to believe a thing to be true and to act upon such belief otherwise than but for that belief he would have acted, neither the person first mentioned nor his representative in interest is allowed in any suit or proceedings between himself and such person or his representative in interest to deny the truth of that thing."

A celebrated English case decided over fifty years ago is still regarded as controlling the principles that underlie this entire topic. Lord Denman delivered the opinion of the court:

"But the rule of law is clear that where one by his words or conduct willfully causes another to believe the existence of a certain state of things and induces him to act on that belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things existing at the same time. *Pickard* v. *Sears*, 6 Ad. El., 469."

The editor says: "This is a leading case in which the seemingly inerradicable conservatism of the English courts gave way before the genius and legal acumen of a distinguished peer."

The doctrine formulated in the above case has been received with great cordiality by the courts throughout the American states.

"The principle is an important one in the administration of the law. It not infrequently gives triumph to right and justice when nothing else could save them from defeat. It proceeds upon the grounds that he who has been silent as to his alleged right when he ought in good faith to have spoken shall not be heard to speak when he ought to be silent. *Bank* v. *Lee,* 13 Pet., 107.''

"He is not permitted to deny a state of things which by his culpable silence or misrepresentations he had led another to believe existed and who has acted accordingly upon that belief. The doctrine always presupposes error on one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage. 77 U. S., 1908.''

"The corner-stone of the entire equitable estoppel is that one who by language or conduct leads another to do what he would not otherwise have done shall not subject a person to loss or injury by disappointing the expectations upon which he is acting.'' *Dickerson* v. *Colgrove,* 100 U. S., 578 (25 L. Ed., 618).

Mr. Justus Swayne, in the last noted case says: "The common law is reason, dealing by the light of experience with human affairs. One of its merits is that it has the capacity to reach the ends of justice by the shortest paths.'' *Beardsley* v. *Foot,* 14 O. S., 414.

In the case of *Williams* v. *Heller et al,* 13 N.P.(N.S.), 329, referred to in the brief of attorneys for defendants Arnold, and the cases therein cited, the rights and duties of parties to a partition suit are gone into quite fully. Among other things, we find therein the following, quoting from Hermann on Estoppel, Volume 1, pages 303 and 304:

"It is laid down as a rule that parties to a partition suit will be estopped to deny the findings and decrees or the recitals of the pleadings where they have been duly served and have had an opportunity to be heard. They have had their day in court. The deed in partition is made by the sheriff under an order of sale in partition and is the act of the parties themselves, and a purchaser at such sale is regarded as a grantee. The transfer to the purchaser is a complete extinguishment of the title of the parties to the action. Herman on Estoppel, Volume 1, page 304.'' Many other authorities are to the same effect.

It is attempted to be claimed in this case that John W. Steen, being a defendant in the partition suit, was not bound by the recitals of the petition, was not bound to set up his claim against his father's estate (which it is admitted was a lien against the land and not of record), and that a purchaser at the partition sale would take the land *cum onere* of the debts of the estate, although held by a necessary party to the partition suit.

The court can not accept that view. A partition suit is not an adverse proceeding in the usual sense of the term where the whole burden is upon the plaintiff, but is simply a method of securing to each party his rights in the property and all parties, as we have seen, are bound by the recitals and findings.

If John W. Steen had any other title claim or interest in the land than that set forth in the petition for partition, it was his duty to set it forth and make it known to the court and the other parties to the suit, and he should not now be allowed a right of action as against this land from 'the sale of which he in a suit where he was a necessary party was duly served, and received his full share of the proceeds.

But it is contended that this is a suit by the administrator of James Steen to secure funds to pay the indebtedness of his decedent's estate, and not the suit of John W. Steen; that the administrator was not a necessary nor proper party to the partition suit and now has a right to this action. That position would be true if the sale of the real estate in question were necessary to pay any just debts of the estate excepting a debt that a party to the partition suit should have made known at the time. But the personal property is amply sufficient, as we have heretofore seen, to pay all debts and costs of administration except the judgment of John W. Steen, and we are led irresistably to the conclusion that John W. Steen at the time of the partition suit had determined either to forego any claim that he might have had against his father's estate over and above any amount he might receive from the proceeds of the personal property belonging thereto after all other claims and expenses should have been paid; or he purposely concealed his claim that he might reap the benefit of the partition sale and then have the land

sold, from the proceeds of which he could collect his claim in full.

The first view is a more charitable one to take, the one in consonance with complete justice and to which the court thinks he should be held.

It is true that the administrator is the party plaintiff herein, but the defendant, John W. Steen, in the view the court has taken, is the sole party to be benefited by the sale. He should upon his judgment receive whatever may be left of the proceeds of the personal estate after the payment of the other debts and expenses are satisfied, as no one whomsoever would be injured by this, for he would, to the extent of the personal property applicable thereto, be entitled to the same against his sisters, although he had made no statement of his claim in the partition suit, for it is in full accord with the pleadings and findings in the case. The question of jurisdiction of the court is raised by the demurrers, but it seems plain to the court both under the General Code, 10783-10784, and under the case of *Doan* v. *Biteley*, 49 O. S., 588, that the court has ample jurisdiction to make any finding necessary to complete justice. Each and all of the separate demurrers therefore will be overruled.