PATRICK v. REED et al.

No. 3044.

Court of Civil Appeals of Texas. Waco.

Nov. 26, 1952.

Watson C. Arnold, Waco, for appellant.

Scott, Wilson & Cureton, Waco, for appellees.

TIREY, Justice.

Appellant, as plaintiff, grounded his cause of action on negligence and sought recovery of damages therefor. At the close of the evidence appellee filed motion for an instructed verdict on the ground that plaintiff had failed to establish actionable negligence proximately causing the injuries and resulting damages and the court sustained this motion and instructed the jury to bring back a verdict for appellee, and a take nothing judgment was entered against plaintiff and he has appealed.

On February 29, 1952, appellant filed in this court his motion for extension of time to file transcript and statement of facts. As grounds for this motion appellant says substantially that the cause was tried on November 26, 1951; motion for new trial was overruled on December 26, 1951, and since such time the official court reporter and the district clerk have been too busy to prepare the transcript and statement of facts which appellant ordered. Appellee received notice of this motion and did not contest same, and thereafter, on March 13, 1952, this court granted the motion and extended the time for filing transcript and statement of facts to April 29th. Thereafter, on April 1, 1952, appellant seasonably tendered the transcript and it was filed here, and on April 2nd tendered the statement of facts and it was also filed here. On April 4, 1952, appellee filed his motion to strike statement of facts. It also appears that appellant, on March 4, 1952, filed motion in the trial court requesting thirty days extension of time in which to file statement of facts and bills of exception and the trial court granted such motion and extended such time for thirty days. Thereafter, on March 14th, statement of facts and transcript were filed in the district court but were not approved by appellee or the judge of the court.

Appellee in his motion says in effect that at the time appellant filed his motion for extension of time in this court the time for filing statement of facts in the trial court had expired without any motion having been filed in the trial court asking for an extension of time in which to file statement of facts in the trial court, and for this reason this court was without any authority or jurisdiction to grant the extension it did.

■ This question has given us some concern. In McKay v. Kelly, Tex.Civ. App., 225 S.W.2d 992, 994 (no writ of error history), we find a very broad and liberal statement of the rule. The court said: "When the motion for an extension of time was filed in the Court of Civil Appeals this Court was thereby given complete jurisdiction over the question as to whether or not appellants would be permitted to file the statement of facts after the time allowed by Rules 381 and 386, T.R.C.P., and, likewise, the trial court lost jurisdiction over the matter." Citing Firquin v. Money, Tex. Civ.App., 67 S.W.2d 892; Rincon Inv. Co. v. White, Tex.Civ.App., 83 S.W.2d 1090; Gerneth v. Galbraith-Foxworth Lbr. Co., 117 Tex. 205, 300 S.W. 17, opinion adopted by S.Ct. We have carefully reviewed these cases. This court, in Firquin v. Money, supra, carefully reviewed Gerneth v. Gal-

braith-Foxworth Lbr. Co., supra, as well as other decisions by this court and other courts, and came to the following conclusion: "The order of this court extending the time for filing the statement of facts in this cause was a judicial determination that the showing of diligence made by appellant as ground for such extension was sufficient. We see no occasion to here review that holding." [67 S.W.2d 893.] (No writ of error history).

Since the appellee did not contest the appellant's request for additional time for the filing of the statement of facts in this cause, and since the court had the right to rely on the grounds stated in appellant's request, this court having judicially determined that appellant's showing of diligence was sufficient, we think that we should not be called upon, under the foregoing factual situation, to reconsider our determination heretofore made. Accordingly, appellee's motion to strike is overruled under the authority of Firquin v. Money, supra. Since appellant did file in this court his motion for extension of time within seventy-five days from the overruling of his motion for new trial, we think that he was in time under the provisions of Rule 386, Texas Rules of Civil Procedure, and we think our decision here is in conformity with this court's opinion in Eldridge v. Lake Whitney Enterprises, 231 S. W.2d 466.

Point 2 assails the judgment of the court " * * * in holding that as a matter of law the plaintiff was contributorily negligent in riding in an overloaded cab." We do not so understand the record. Our view is that the court gave the instruction on the theory that appellant's testimony failed to tender actionable negligence proximately causing the accident as charged by him. Appellant went to trial on his first amended original petition and as we understand the petition, he seeks to hold appellee on the ground that the taxicab was overloaded at the time of the accident and resulting injuries to plaintiff's wife, in that it contained eight persons, which was in violation of the city ordinance in force and effect at the time; that defendant failed to have the taxicab inspected as required by the provisions of the ordinance; that the taxicab being operated had a defective door latch and that defendant failed to provide a safe vehicle for plaintiff and his wife to ride in, and that each of these acts and omissions constituted negligence, and that such acts, separately and concurrently, were the proximate cause of the accident and resulting injuries to plaintiff's wife.

The plaintiff testified in part:

"I did not see my wife fall. I sort of dozed off to sleep, and when she fell somebody hollered 'your wife fell' and that roused me up. By that time she was out on the ground. The first time I saw her after I dozed off she was on the ground, so I got out and helped to get her back in.

"I didn't have many bottles of beer out there. Of course I didn't keep count of them, but I didn't have many; just a few. Mrs. Patrick didn't have about the same number that I had. I didn't see her drink any. I don't know how many she had. I didn't pay any attention to it. I think we ordered a round of beer every time we ordered. I wont be sure. I guess we ordered for the whole bunch. I didn't see the little girl drink, and I don't think Mrs. Hutto drank any beer. She drank soda water and whisky. Mrs. Hutto was the only one that drank soda water and whisky in our party. Mrs. Patrick didn't drink any soda water and whisky that I saw. Neither of the girls drank soda water and whisky that I know. I didn't see them. They drank soda water but whether they put anything in it I don't know. I didn't see them. I guess I was feeling a little bit good when we left the Turf Club. If I drink a little bit that way it makes me get sleepy. It kind of makes me go to sleep. I wasn't drunk. When we got in the cab I knew how many people were in the cab. I knew the whole bunch of us that come out there got in the cab and come back. I knew there was seven in the cab. I didn't tell the driver where to go after we left the Turf Club. The others were doing the bossing. I didn't have anything to do with

ordering the cab. I think those girls were doing the calling of the cab and where they wanted to go. They were going to a dance. I guess they just carried me along for the ride. I didn't make any protest as to the number of people that were in the cab. I didn't think it was any of my business."

Mrs. Patrick, the wife of plaintiff, testified in part:

"I said in the deposition that none of us drank over two bottles at Stanley's Drive In while we were waiting for the cab. * * * There at Stanley's my husband and I and Mrs. Hutto and Peters and a stranger and the two girls got into the cab and asked the driver to take us to the Turf Club. We sat in the cab going out to the Turf Club the same way that we did coming back. I sat in my husband's lap on the way from Stanley's to the Turf Club. I didn't make any protest to the taxicab driver at any time about the number of people in the cab. * * * I didn't pay any particular attention to who was the last person to get in the taxicab at Stanley's Drive In about eight-thirty. I couldn't say for sure whether I was the last one to get in or not. * * * I imagine it was about nine o'clock when we got to the Turf Club and we left the Turf Club about eleven to eleven-thirty. I don't think it was later than that. We were out there somewhere between two and three hours. During that time I didn't drink over one bottle of beer. In my deposition I was asked if I didn't drink about five bottles of beer and I said I didn't drink that many. * * * I tell the jury that during all the time I stayed at the night club I just drank one or two bottles of beer. I just know I didn't drink any more because I was not intoxicated. * * * My husband drank beer. I danced some. My husband danced some. * * * It was a night club and to make a long story short it was a drinking and dancing party."

She further testified that they called the taxicab about 11:30 p. m. in order to leave the Turf Club, and said:

"The taxicab came and stopped there headed north towards Dallas. The cab had a front door and rear door. I don't know who opened the front door as we got in it. I don't know who opened the rear door. I didn't notice. Mrs. Hutto and the two girls got in the front seat. The driver was also in the front seat. Mr. Peters got in the back seat on the left hand side or immediately to the left of me and this stranger was on the extreme left side of the rear seat of the cab. My husband was also on the back seat. There were four people on the back seat. * * * I was the last one in the cab coming back. I am the one that closed the rear door if there was any closing done. I sat down in my husband's lap again. I knew before the cab started up from the night club how many people were in the cab. * * * Then the driver turned the cab around and started back toward Waco and drove some distance and I told the driver I had dropped my purse and wanted him to stop. At that time I knew I had dropped my purse in the cab. I asked him to stop because I couldn't reach my purse without getting up. I didn't want to wait until I got to my destination to get my purse because I wanted to protect it; keep it clean. It was under so many feet. * * * I asked him to stop. I asked him to stop and he did stop. He actually came to a complete stop. Then I got up off of my husband's lap. Somebody struck a match and I saw my purse. I didn't hear the taxi driver say 'please put out the match; if you will open the door the light will come on.' I said in my deposition that when the door opened the light came on. The effect of opening the door was to make the light come on. When I asked Henry to light a match that I might see my purse he did so and I located it but couldn't reach it. When the door was opened and the

light came on I was turned in an effort to reach my purse. My purse was on the opposite side of the cab, on the extreme left, and I reached over for it and got it and started to sit back down. I didn't lose my balance until after the door came open. I came back up with my purse and must have pressed against the door and the door came open and I lost my balance. I don't think I testified in my deposition that the door came open because I got over balanced. It was the fact that the door came open that caused me to over balance and fall. I got my weight against the door and that is why it came open. It was the back door that came open. The front door wasn't open when the light came on. * * * I couldn't say that the number of people in that cab had nothing to do with the accident. I was asked the question in my deposition 'The number of people in the taxicab had nothing to do with the accident itself as far as you are concerned did it?' and I answered 'No sir, it didn't.' That is correct so far as my group is concerned. My party wasn't responsible. * * * The driver of the taxicab never got out of the cab at any time that I know of from the Turf Club on back to Stanley's Drive In. He didn't up until my accident I know. I have told you that I didn't trip over anybody's feet."

Mrs. Patrick further described her accident in this manner:

"I don't know exactly how far down the road we had gone when I asked the driver to stop. It may have been something like a mile. I don't recall exactly. Then my purse slipped off of my lap and I told him to wait a minute; I had dropped my purse. He stopped the cab then. Before I asked the driver to stop I asked Henry to light a match; thought I might see it and reach it without stopping the car, but I couldn't reach it. When he lit the match the purse was over on the opposite side and I couldn't reach it without getting up and I asked him to stop. The driver then stopped and I got up and I still couldn't reach it. It was so far over that I had to raise up and so I raised up and I had to make a half turn. In other words I had to reach around like that in order to reach it and as I reached it and came back up I had to straighten up to sit down in my husband's lap and my back was to the door and I must have pressed against the door and the door came open at that time and I pitched out backward."

■ Bearing in mind the grounds of negligence relied on by the plaintiff, did the testimony adduced tender the issue that the overloading of the taxicab was actionable negligence and the proximate cause of the accident and resulting injuries? Our view is that it did not. The admissions by both Mr. and Mrs. Patrick established as a matter of law that the number of the persons in the taxicab had no causal connection with the accident. Their admissions in this behalf brought them within the well established rule "that where a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admissions, and cannot successfully complain if the court directs a verdict against him." See Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569, 570. Our Supreme Court has consistently followed the foregoing rule. See also 17 Tex.Jur. 577, sec. 240, for statement of the rule. For additional cases see 4 Tex. Jur. pp. 647, 648, 10 Year Supplement.

■■ Moreover, this testimony of Mr. and Mrs. Patrick acquitted the taxicab driver of all other negligent acts that proximately contributed to Mrs. Patrick falling out of the cab. When Mrs. Patrick asked the driver to stop the car he did so immediately and brought it to a complete stop. No one did anything to her to cause her to fall and her getting overbalanced and falling was solely her own act as detailed by her. Her explanation as to why the door opened was to the effect that she got her weight against the door and that is why it came open. Appellant had the bur-

den of tendering testimony to the effect that the negligence of the taxicab driver proximately caused or proximately contributed to cause the fall of Mrs. Patrick, and in so doing he could not be aided by presumption. For statement of the rule see 30 Tex.Jur. 800, secs. 127, 128, 192, and cases there collated; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Atchison, Topeka & Santa Fe Railway Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Atchison, Topeka & Santa Fe Railway Co. v. Saxon, 284 U.S. 458, 52 S.Ct. 229, 76 L.Ed. 397; Emmons v. Texas & P. Railway Company, Tex.Civ. App., 149 S.W.2d 167. But appellant contends: "If the injured party had not been sitting on plaintiff's lap but had had a seat in the cab, she would never have fallen out of the door of the cab." This contention is in conflict with the well settled rule that you cannot build one presumption upon another presumption.

■ All of the testimony tendered by appellant was positive and emphatic that the number of persons in the taxicab had nothing to do with the accident or her injuries. At her request the taxicab driver brought the vehicle to a complete stop. No one in the car did anything to cause her to fall. Mrs. Patrick was sitting in her husband's lap. She reached for her purse and after getting the same she leaned back and in some way struck the door and fell out of the cab. She was the last one to enter the cab and close the door and why the door opened was not explained. It is true that appellant asserted as a ground of negligence that defendant failed to have the taxicab inspected and was operating a cab with a defective latch; however, no testimony was tendered relating to either of these matters. Since all of the testimony tendered by appellant was to the effect that no negligent act or omission was committed by the taxicab driver at the time and on the occasion in question that contributed or proximately contributed to the appellant's wife falling out of the cab, appellant is bound by such testimony and we think it

is conclusive on the issues of negligence and proximate cause. For statement of this rule see 17 Tex.Jur. 928, par. 419. See also Texas Prudential Ins. Co. v. Turner, Tex. Civ.App., 127 S.W.2d 563; Whitefield v. Whitefield, Tex.Civ.App., 140 S.W.2d 347, Id., Tex.Civ.App., 160 S.W.2d 306.

■ Moreover, our view is that the instructed verdict given by the court is supported by another rule of law stated by Justice Gallagher in Dunlap v. Wright, Tex.Civ.App., 280 S.W. 276, point 6 on page 279. The rule there stated is: " * * * when the evidence of an interested witness is direct and positive on the point at issue, and where there are no circumstances in the record tending to discredit or impeach his testimony, a verdict contrary thereto will be set aside, that such testimony will justify an instructed verdict, and that a judgment contrary thereto may be reversed and rendered." Our view is that the foregoing rule is applicable here as against appellant. All of the testimony tendered is to the effect that the driver of the taxicab brought his car to a complete stop upon the request of appellant's wife, that when she leaned forward to get her purse and came back to sit down she fell against the door and the door came open and she fell to the ground. Her evidence is direct and positive on the questions of negligence and proximate cause and there are no circumstances in the record tending to discredit or impeach her testimony. It is therefore our view that the court did not err in instructing the jury to bring back a verdict against plaintiff.

Because of the views here above expressed, appellant's Point 1 that the court erred " * * * in not allowing the plaintiff to introduce the city ordinance of the City of Waco" relating to overloading of taxicabs passes out of the case.

Accordingly, the judgment of the trial court is affirmed.

·LESTER, C. J., took no part in the consideration and disposition of this case.