Earl PODOLNICK et al., Appellants,

v.

Mary Jane HAMILTON, Appellee.

No. 10792.

Court of Civil Appeals of Texas.

Austin.

June 29, 1960.

Rehearing Denied July 27, 1960.

Owens & Purser, Austin, for appellants.

Cofer & Cofer, Austin, for appellee.

GRAY, Justice.

This appeal is from a summary judgment awarding appellee a recovery of earnest money paid under the terms of a contract for the purchase and sale of real estate.

Appellee, M. J. or Mary Jane Hamilton, is and at all times material here was the wife of M. W. Hamilton. On November 24, 1958 appellee and her husband entered into a written contract with appellants, Earl Podolnick and Lena Novy Podolnick, Individually and as Joint Independent Executrix of the Estate of Louis Novy, Deceased.

By this contract appellee and her husband contracted to purchase a lot or tract of land in the City of Austin for a total consideration of $21,000 to be paid as follows:

> "Five Thousand and no/100 Dollars ($5,000.00), cash, which Purchasers have deposited with Sellers, said sum to be applied on the total consideration of this transaction when consummated; if this transaction is not consummated, said sum shall be delivered in accordance with the terms of this contract."

The contract further provided:

> "If Purchasers default on this contract, the earnest money deposited with Sellers shall be forfeited as liquidated damages for such default."

It also provided for the furnishing of an abstract, the making of objections to the title to said property as shown by the abstract and providing a time for curing the objections. It then provided:

> "If said objections are not cured by Sellers or waived by Purchasers within said time, then this contract shall become null and void and the earnest money so deposited shall be returned to Purchasers if title is not good and marketable."

And further that:

> "In the event that Sellers should fail or refuse to consummate this transaction, Purchasers shall be entitled to specific performance of this contract, or damages for such refusal, at the election of Purchasers."

The $5,000 recited by the contract was paid by M. W. Hamilton by check drawn on The Austin National Bank against an account designated as "M. W. Hamilton Operating Account." M. W. Hamilton requested additional time to pay the balance due under the contract and appellant, Earl Podolnick, replied to this request by letter dated February 24, 1959 and addressed to "Mr. M. W. Hamilton" as follows:

"Dear Mr. Hamilton:

"On November 24, 1958 you and your wife, M. J. Hamilton, entered into a contract to buy the vacant property on the Northeast corner of Enfield Rd. and Exposition Blvd., as described in the contract, for the total sum of $21,000.00 on the basis of $5,000.00 down and the balance payable (10) ten days after abstract delivered and checked for title objections. This abstract was delivered to your attorney immediately and has been checked with no objections being raised.

"With due respect to the owners of this property it is necessary to put you and your wife on notice that you have (7) seven days, Feb. 25, 1959 to March 4, 1959, in which to pay the *owned* (sic) balance of $16,000.00 in full, to obtain ownership of said property, or forfeit the down payment of $5,000.00.
"Very truly yours,
"(s/Earl Podolnick)
"Earl Podolnick
"CC:
"Mrs. M. J. Hamilton
"Mr. Hume G. Cofer
"Mr. Wroe Owens"

On March 3, 1959 appellee filed this suit whereby she disaffirmed the above contract, asserted her defense of coverture, alleged that the $5,000 "earnest money" deposited at the time of the execution of the contract was paid out of a bank account which was her separate property and prayed for a judgment for its recovery. Her suit named as defendants Earl Podolnick and wife, Lena Novy Podolnick, Harold C. Novy, and Merton W. Hamilton. Defendants Lena Novy Podolnick and Harold C. Novy are sued individually and also in their capacities as Joint Independent Executrix and Joint Independent Executor, respectively, of the estate of Louis Novy, deceased.

Appellee alleged that M. W. (Merton) Hamilton had abandoned her, refused to sue for recovery of her property and asked that it be adjudged that he had no interest in the $5,000. He is not a party to this appeal and will not be further noticed.

The parties, other than M. W. Hamilton, filed motions for summary judgment. These motions were accompanied by affidavits. Appellee's affidavit among other things stated:

"All of the $5,000.00 deposited with Mr. Podolnick was my separate property. When my husband and I married he was almost completely without funds, having no more than $60.00 in one bank account and no more than $310.00 in another. After we married the only money which either of us had was money received by me from the sale of securities which members of my family had given me long before my marriage to Merton W. Hamilton. Neither of us had any income, and we did not have any community property, nor did we acquire any community property before the $5,000.00 deposit was delivered to Mr. Podolnick. During this time all the money, more than $75,000.00 in amount, which was placed in the bank account which we used, at the Austin National Bank, was money received from the sale of securities owned by me before my marriage. The $5,000.00 deposit involved in this case was paid out of said money which I had from the sale of securities owned by me before my marriage."

The affidavit of Earl Podolnick attached to appellants' motion states:

"During the negotiations for the sale of the property described in said contract the Plaintiff, Mary Jane Hamilton, was at all times present, and she was present at the execution of said contract. The purchasers under the terms of said contract were M. W. Hamilton and wife, M. J. Hamilton, and the contract was executed in that manner.

"The Five Thousand and no/100 Dollars ($5,000.00) paid by the check of M. W. Hamilton was the down payment on said property as is recited in the contract above referred to.

"At no time during the negotiations for the purchase of said property up to and including the day the contract was executed did the Plaintiff, Mary Jane Hamilton, ever mention that the Five Thousand and no/100 Dollars ($5,000.00) paid by M. W. Hamilton was her separate property, or that she had any interest in such money, if such fact is true. I do not now know nor have I ever known whether or not said sum of money was the separate property of the Plaintiff and, therefore, now deny that such sum of money represented by the check of M. W. Hamilton was the separate property of the Plaintiff."

The trial court considered the two motions together, granted appellee's motion and rendered judgment awarding her a recovery of the $5,000 sued for as her separate property.

■ We think the contract was clearly executory. 43–A Tex.Jur. p. 133, Sec. 120. We also think that the $5,000 was earnest money. The contract itself as above quoted twice so designates it. Appellants' pleadings also so designates it. They say:

"Defendants specifically deny that said money was a part of Plaintiff's separate property and demand strict proof thereof.

"That even if the 'earnest money' which was tendered to the Defendants by M. W. Hamilton was at some time prior to the above described transaction the separate property of the Plaintiff, she is now estopped to assert the separate ownership of the money because she entrusted the money to her husband, M. W. Hamilton, to control and manage and empowered him to act as her agent in transferring the funds described pursuant to the contract of the parties. These Defendants reasonably relied on the facts as they appeared to be. Plaintiff was present at the negotiations of the parties to the contract and was present at the signing of the agreement, and she was willingly affixed her signature thereto; though she had many opportunities to do so, she made no effort at any time prior to this suit to inform the Defendants of the separate character of the funds, if such is true. The plaintiff, by her acquiescence in and her ratification of the acts of her husband and her failure to inform the Defendants of the separate character of the property, if such was the fact, is now estopped to assert that the 'earnest money' was her separate property. Unless Plaintiff is held to be so estopped, these Defendants will suffer substantial damage."

It could not be a down payment on the land for as quoted supra the contract provides that it would be "applied to the total consideration of this transaction when consummated." The sale was never consummated.

The status of the $5,000 was not changed after it was "deposited." The letter from Earl Podolnick to Mr. Hamilton above quoted was in answer to a request for an extension of the contract and it granted an extension for a definite time—to March 4, 1959. For that reason when appellee's suit was filed on June 3 the contract remained executory. 43–A Tex.Jur.Sec. 217, p. 248.

At that time there had not been a "forfeiture" of the deposit and the contract had not been consummated.

■ Appellee, having urged her defense of coverture, was not bound by the contract of purchase. Taylor v. Hollingsworth, 142 Tex. 158, 176 S.W.2d 733, 737. There the court said:

"It is true that our present statutes authorize a married woman to incur personal obligations or debts for the benefit of her separate estate, but this power does not authorize her to purchase property and bind herself to a personal executory obligation to pay therefor. 23 Tex.Jur. p. 203, and authorities there cited."

And the fact that she was joined by her husband, or joined him, in making the contract did not make it binding on her, 23 Tex.Jur. p. 226, Sec. 193. As to her the contract was voidable at her option.

There is no assertion here that the contract was for necessaries for the wife or that it was for the benefit of her separate estate and the contract is of such nature that such contentions could not be successfully urged. See: 23 Tex.Jur. p. 202, Sec. 171.

Appellant, Earl Podolnick says in his affidavit that appellee did not divulge that the $5,000 was her separate property. He of course knew that she was married and was charged with notice that she could not bind herself by the contract of purchase. The fact that he did not inquire and did not know that such sum was separate property could not change its status as such. 23 Tex.Jur. p. 234, Sec. 202.

■ The fact that the check given by M. W. Hamilton was drawn on "M. W. Hamilton Operating Account" is not of controlling importance here. Art. 4622, Vernon's Ann.Civ.St., does no more than to state a presumption that money on deposit in a bank is the separate property of the party in whose name it stands. We need not here determine in whose favor that presumption runs for the reason that it does not change the actual status of the account, the presumption being rebuttable. Hightower v. Hightower, Tex.Civ.App., 236 S. W. 197. It is our opinion that appellee's affidavit sufficiently discharged her burden of establishing the $5,000 as being her separate property. Her affidavit is of course to be tested as the evidence of an interested witness. However it is direct and positive on that issue and the only evidence in the record that tends to discredit or impeach her is the affidavit of Earl Podolnick who said only that he did not know, and had never known whether such money was appellee's separate property and with this explanation he simply denied that it was. Under this condition of the record we think there was no issue of fact presented as to the actual ownership of said money. Patrick v. Reed, Tex.Civ.App., 253 S.W.2d 444. There being no conflicting evidence of probative value to the contract an instructed verdict for appellee on that issue would have been proper. Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422.

■ What we have already said shows: that the $5,000 was deposited as earnest money; that, the contract not having been consummated, its status as such had not changed at the time appellee rescinded the contract and elected to recover her separate property; and that such sum was in fact the separate property of appellee. We thus come to the actual question for decision: Can appellee, under her plea of coverture, recover her separate property paid to appellants as earnest money?

Unquestionably the circumstances and the letter to M. W. Hamilton show that appellants, presumably Earl Podolnick, held the money in the nature of an escrow to await consummation of the contract. The pleading alleged: "Defendants would show unto the Court that the property in question is a part of an estate." In his affidavit Earl Podolnick says:

"I told M. W. Hamilton that this matter involved an estate and that as far as I was concerned they had forfeited their down payment under the contract of sale, but, however, I would allow him a short time within which to pay the balance due. I wrote the letter on February 24, 1959."

Rutherford v. Alamo Abstract & Title Co., Tex.Civ.App., 185 S.W.2d 498, Er. dism., was a suit by a married woman to recover earnest money paid out of her separate estate to a stakeholder under a contract to purchase real property. The facts in that case are very similar to the facts here but it was not a summary judgment proceeding. The court said:

"The contract here involved provided that: 'Upon failure of buyer to comply herewith, seller may, at his option, either enforce specific performance, or forfeit this earnest money as liquidated damages.' To permit cross-defendants to recover from the stakeholder the earnest money would be to give effect to this provision of the contract. The contract being voidable at the option of the wife, when she elects to set up her coverture and avoid such contract, then and in that event each and every stipulation in the contract becomes unenforceable."

The court cited as "directly in point" Guest v. Cox, Tex.Civ.App., 34 S.W.2d 301. There Mrs. Guest joined pro forma by her husband entered into a contract with Cox to purchase real property and agreed to pay damages if she failed or refused to close the deal. She refused to perform and Cox sued for specific perormance and in the alternative for damages. Mrs. Guest plead coverture. The court said:

"The contract was wholly executory, and under the authorities it is settled that, by reason of her coverture, the contract was not enforceable against Mrs. Guest. The question calls for no discussion, for the authorities upon the subject are clear and speak for themselves."

The announcements of law made in Fine v. Lutz, Tex.Civ.App., 278 S.W.2d 889, 891, Er. ref., n.r.e., a summary judgment proceeding, in which a married woman under a plea of coverture sued to recover earnest money paid under her contract to purchase real estate, are in accord with what we have said supra. However the court said:

"The character of the $1,500 not having been established as 'earnest money', and in the respect material, the contract not having been established as executory, summary judgment was erroneously entered."

Appellants say that appellee is estopped to assert her coverture. They do not say that they did not know she was a married woman. The contract itself recited "M. W. Hamilton and wife, M. J. Hamilton," and appellants' pleading above quoted says " * * * she entrusted the money to her husband * * *" The affidavit of Earl Podolnick says appellee was present during the negotiations leading up to the making of the contract; at its execution and at no time mentioned that the $5,000 was her separate property or that she had any interest therein. Neither the affidavit nor the pleadings say that appellee was present when the check was given nor that she participated in giving it. Appellants do not say that they relied on appellee's silence, were influenced by it, that they acted on it, or that appellee remained silent with the intention to mislead appellants or with the intent that it should be acted on, or that they did act on it.

■ We agree that a married woman may be estopped but there must be present facts which will work an estoppel against her. The most that is asserted here to create estoppel against appellee is her silence but there were no facts or circumstances present which required her to speak. Appellants do not even say that appellee knew that the check given by M. W. Hamilton

was drawn on an account that she claimed to be her separate property, the contract merely recites a cash deposit of $5,000.

In support of their asserted estoppel against appellee appellants cite Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932. The court there said:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' 31 C.J.S., Estoppel, Sec. 67, page 254. Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel.' "

Applying this test to the facts before us there is not shown an estoppel against appellee. 17 Tex.Jur. p. 137, Sec. 9.

What we have just said in disposing of appellants' plea of estoppel is applicable to, and overcomes, their assertion that appellee was guilty of fraud. Brown v. Federal Land Bank of Houston, Tex.Civ.App., 180 S.W.2d 647, 652, Er. ref., w. m.

■ The extension of the contract evidenced by the letter supra was supported by sufficient consideration. It constituted a forebearance on the part of appellants to consummate the contract, forfeit the $5,000 or sue for specific performance of the contract. City of Marshall v. J. W. & W. S. Atkins, 60 Tex.Civ.App. 336, 127 S.W. 1148, Er. dism. 10–A Tex.Jur. Contracts, Secs. 42 and 48.

We have considered appellants' points and because error is not presented the judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

"Where money is voluntarily paid, with full knowledge of all the facts, it cannot be recovered, although it may have been paid upon a void demand or upon a claim which had no foundation in fact. Taylor v. Hall, 71 Tex. 216, 9 S.W. 141; Gould v. McFall, 118 Pa. St. 455, 12 Atl. 476, 4 Am.St.Rep. 606. This proposition is too well settled to require further citations of authority. A married women who voluntarily pays her money or other personal property upon a contract made by her, or in any way that would bind a man, cannot recover it back simply upon the ground that she is a married woman. * * * Mrs. Pitts had the right to refuse to receive the property, and could not be compelled to complete the unexecuted part of the contract; but when she elected to abandon the trade she must determine for herself, as if she were a man, whether it was to her advantage to refuse to proceed, and, having so decided, she has only such remedies as a man would have had under the same state of case. It would be a novel case for a plaintiff to allege that the defendant had done no wrong in the transaction, but that, because she was not bound to carry out her agreement, she was entitled to relief against her own deliberate act, which was lawful in itself, or, if unlawful, would not put the defendant in the wrong. If she is

damaged by the result, she had it in her power to have protected herself by paying the remainder of the price and taking the goods; and if the property purchased was not, in her opinion, of sufficient value to justify this, she has the advantage, over a man, of abandoning the contract and escaping responsibility for other damages than the sum advanced."

So spoke Associate Justice Brown in Pitts v. Elsler, 1894, 87 Tex. 347, 28 S.W. 518.

Since appellee voluntarily paid appellants $5,000 upon a contract made by her, which contract would have been binding upon her had she been a man, and since I believe the above statement of the law to be current law and to be binding on this Court, I respectfully dissent from the majority opinion.

Besides Taylor v. Hollingsworth, 142 Tex. 158, 176 S.W.2d 733, which is cited for the general rule that a married woman is not bound by a personal executory obligation to pay for property purchased by her, the majority relies upon three cases, Rutherford v. Alamo Abstract & Title Co., Tex. Civ.App., San Antonio, 185 S.W.2d 498, writ dismissed; Guest v. Cox, Tex.Civ.App., El Paso, 34 S.W.2d 301; and Fine v. Lutz, Tex.Civ.App., Fort Worth, 278 S.W.2d 889, writ ref., N.R.E.

In Guest v. Cox, a married woman contracted to buy a house and lot for $500 cash and notes. She agreed to pay $1,000 damages if she refused to close the trade. She refused, and suit was brought for specific performance of the contract or for the $1,000 damages. Clearly this suit was on the executory portion of the contract and not for the $500 which presumably had been paid.

Alamo was based wholly upon the opinion in Guest v. Cox, which the Court considered to be "directly in point." [185 S.W. 2d 499.]

The Court in Alamo distinguished Pitts v. Elsler, supra, saying that "case un-doubtedly states the law in this State, but the rule there stated cannot be made to apply to money merely placed with a stakeholder as earnest money."

If this distinction is sound it is not applicable here for the money here was not paid to a stakeholder.

In Fine v. Lutz, a summary judgment permitting a married woman to disaffirm her contract to purchase realty and recover the "earnest" money paid thereon was reversed, the Court not being satisfied that the earnest money deposited with the agent for the seller had been converted into liquidated damages by the seller as the contract provided it could be in the event purchaser failed to consummate the contract.

Before discussing the nature of "earnest" money, I desire to dispel the statement made by the majority that appellants "held the money in the nature of an escrow to await consummation of the contract." To constitute an escrow the legal instrument or money must be delivered to a third party. Campbell v. Barber, Tex.Civ.App., Fort Worth, 272 S.W.2d 750, writ ref., N.R.E. Delivery to grantee is not an escrow. See authorities cited under Escrow, Vol. 15 Words and Phrases, p. 234.

Since the money here was deposited with the vendors, there was no deposit in escrow.

In Sousa v. First California Co., District Court of Appeal, First District, Division 2, California, 101 Cal.App.2d 533, 225 P.2d 955, 962, it is stated:

"Nowadays earnest and part payment are regarded as having the same meaning, 37 C.J.S. Frauds, Statute of, § 162, page 643; 49 Am.Jur. 583; 1 Williston on Sales, § 97, Note 19, the former meaning as something given to bind the bargain and not to be applied on the purchase price having become obsolete."

The contract here provides that the earnest money shall be credited on the total

consideration upon consummation of the contract.

The only reason this contract was not consummated was that appellee defaulted. Upon such default the earnest money, under the contract, became subject to appropriation by appellants as liquidated damages. This case does not involve the reasonableness of such provision.

The only reason the majority gives for not giving effect to this provision is the letter of courtesy and grace written by appellants to Mr. Hamilton warning of the forfeiture of the $5,000 unless the balance of the purchase price was paid within a stated time. It was in no sense a contract or agreement and is wholly without consideration.[1] It did not in any manner affect the contractual consequences of default provided for in the contract which became vested in appellants upon default. If the letter had been acted upon by appellee to her prejudice, then an estoppel may have arisen in her favor. Instead of acting on the letter to her prejudice, appellee has acted on it to her asserted advantage. This is a very peculiar turn for the law of estoppel to take.

Under the present record, I believe appellants' motion for summary judgment should have been granted.

In any event, I am of the opinion that fact issues are present regarding (1) the nature of the money deposited as being the separate property of appellee or community property (2) estoppel of appellee to contend that the money was her separate estate, and (3) the husband of appellee acting as her agent.

On the Issues of Dissent.

GRAY, Justice.

We think it proper to observe that the case of Pitts v. Elsler cited by Justice HUGHES was decided in 1894 and it, like Houston Loan & Investment Co. v. Abernathy, 131 Tex. 601, 117 S.W.2d 1089, was a suit to recover a part of the purchase price paid for personal property—in the Abernathy case for real property. Neither was a suit on an executory contract. Here the most that can be said is that the $5,000 was "deposited" with the sellers "to be applied on the total consideration of this transaction when consummated." The transaction was never consummated and the $5,000 remained a deposit and regardless of what it may be called its status never changed.

Justice HUGHES concludes his discussion of the letter to M. W. Hamilton by saying "This is a very peculiar turn for the law of estoppel to take." There can be no question but that the letter, whether it be an extension of the contract, a letter of courtesy and grace or an estoppel, it precluded appellants from taking action on the contract prior to March 4 and until that date the contract remained executory.

We need not cite authorities to support the statement that if land belonging to the separate estate of a married woman is not conveyed in a manner authorized by law then she or her heirs may recover the same. The question of whether she must return what she received need not be here noticed because appellee received only a right to acquire land and she relinquished that right.

The law does not authorize the wife to bind herself by the executory contract be-

1. The majority says "The extension of the contract evidenced by the letter supra was supported by sufficient consideration."

Not even appellee makes this contention. She says "That letter did not con-

stitute an extension of time but merely a declaration of intention to consummate, or declare a default, by March 4th. * * * *" Therefore the claim that there was no consideration for defendant's letter has no significance.

fore us and to deny her a recovery of the payment she was not by law authorized to bind herself for would be a strained and unreasonable construction of the law.

The only act of appellee that can work an estoppel against her was her silence. In Johnson v. Bryan, 62 Tex. 623, 626, the court said:

"The facts averred in the answer and found by the court do not constitute an estoppel. Mrs. McDonald was guilty of no positive act of fraud, nor did she conceal or suppress anything when she was called upon to disclose it. As was truly said in U. S. Bank v. Lee, 13 Pet. [107] 118 [10 L.Ed. 81], 'All we need say is, that a court of chancery cannot hold her responsible because of her silence.'"

There is nothing in this record that can constitute M. W. Hamilton the agent of appellee, his wife, in the making of the contract. 23 Tex.Jur., Sec. 118, p. 146.